[No. 18694.   Department Two.   November 18, 1924.]

JAMES J. WALSH, *Appellant*, v. N. J. WESCOATT *et al.*,
*Respondents.*[1]

EQUITY (38)—REFORMATION OF INSTRUMENTS (6)—MUTUAL MIS-
TAKE—MAXIMS—DEFENSES.   Under the maxim that he who seeks
equity must come into court with clean hands, one who, by mis-
take, gave an unrestricted endorsement of a note in a trade, which
he induced by false representations, cannot ask reformation of his
endorsement, even if his false representations were innocently
made.

COSTS (72)—ON APPEAL—APPORTIONMENT. Where the lower court
did not decide the issue which must determine the action, it may
be equitable to refuse costs on appeal to either party.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered December 13,
1923, upon findings in favor of the defendants, dis-
missing an action on a promissory note, tried to the
court. Reversed.

*Duell & Boyles* and *Burcham & Blair,* for appellant.
*Charles P. Lund,* for respondents.

BRIDGES, J.—This is an unusual case. The facts are
that the respondents were the owners of a note given
by one Williams, which was secured by a mortgage
upon real estate in Idaho.   The appellant was the
owner of certain other personal property.   The parties
traded, the respondents assigning their note and
mortgage to the appellant, their endorsement of the
note being unrestricted.   Later, the appellant brought
suit on the note, waiving the mortgage.   The action
was against Williams, as the maker, and against the
respondents as unrestricted endorsers.   Williams was
not served with process.   The respondents, by their
answer, alleged that, as a part of the trade, it was

[1]Reported in 230 Pac. 160.

mutually agreed that they were to endorse the note without recourse against them, but that through mistake the endorsement was unrestricted. They prayed for a reformation of the endorsement so that it would show that it was without recourse. The appellant, in his reply, denied that there was any agreement that the note was to be endorsed without recourse, and further alleged that the respondents were not in position to seek relief from a court of equity, because, in their effort to consummate the business transaction, they had fraudulently misrepresented the land on which the mortgage was given which secured the note sued on; and that he had no personal knowledge concerning the lands or the value of the security, and did not have any opportunity prior to the consummation of the transaction to examine the lands or inquire about them, and that he relied on the representations so made.

On these facts the case went to trial. Considerable testimony was introduced; first, on the question of endorsement; and, second on the question of the alleged misrepresentations as to the character and value of the land. The trial court found with the respondents on the first question, but made no determination of the second. Judgment was entered on the cross-complaint, reforming the endorsement of the note as prayed for and dismissing the appellant's action. The trial court seemed to be of the opinion that the testimony with reference to the alleged misrepresentations was immaterial in this case. Appellant does not seek rescission or damages, but merely alleges the misrepresentations for the purpose of depriving respondents of the right to obtain equitable relief.

There are two questions before us; one of fact concerning the endorsement, and the other concerning the alleged misrepresentations.

It will not be useful to review the testimony as to whether there was a mutual agreement that the respondents' endorsement was to be without recourse; suffice it to say that a reading of the testimony convinces us that the trial court was right in this respect, and that if there were nothing else in the case the judgment should be affirmed.

But it is argued by the appellant that whether the respondents are entitled to a reformation of their endorsement depends entirely upon whether they fraudulently or falsely misrepresented the character of the land to his injury, contending that, if the testimony establishes such, the respondents were not entitled to any relief in a court of equity. The argument is based on the maxim that "one who seeks equity must come into court with clean hands."

If there were misrepresentations and they were fraudulently made, and appellant had a right to, and did, rely on them to his injury, then the principle of this maxim is properly applicable to the case. Equity demands of suitors fair dealing with reference to matters concerning which they seek relief. If they have acted in bad faith, or been guilty of fraud, or have resorted to trickery to the injury of another, they will be turned away as unworthy of the consideration of such a court. They will be left where they are found. In other words, equity will not help those who have been guilty of serious misconduct in the same transaction concerning which they seek relief. That sought by the respondents is directly connected with the fraud charged against them, and if that charge is true, we see no reason why a court of equity should relieve them of their mistake concerning their endorsement of the note. What we have said is with ref-

erence to fraudulent misrepresentations as distin-
guished from unintentional misrepresentations.

But there is another question which may be in the
case, and which we ought to dispose of lest it should
arise upon a new trial. There is an intimation in the
memorandum opinion by the court, and also in one
of the briefs, that, if the respondents made any misrep-
resentations concerning the land, they did so in the
honest belief they were correct. Suppose the trial
court should find that the representations were untrue
but were made honestly and in the belief that they were
true, and that the respondents were not guilty of any
actual fraud, and that the appellant relied upon such
misrepresentations to his damage, then the question
arises whether the court, under those circumstances,
would deny respondents reformation of their endorse-
ment.

The respondents argue that, if they unintentionally
misrepresented the land, it cannot be said that they
come into court with unclean hands, and that the
maxim is applicable only when there is intentional
wrongdoing. But it seems to us that the maxim is
broader than that. It is associated with the other
maxim that he who seeks equity must do equity. If
the respondents misrepresented the land, the result
is the same both to them and the appellant, whether
the misrepresentations were honestly or fraudulently
made—the appellant, under those circumstances,
will have been injured and the respondents will have
reaped a corresponding benefit. So long as one retains
the benefits flowing from misrepresentations, he may
not seek the interposition of a court of equity. It is
said that

" 'A court of equity acts only when and as con-
science commands, and if the conduct of the plaintiff be

offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be remediless in a court of equity.' *Deweese v. Reinhard,* 165 U. S. 386. Again, it is said:

"The exclusion of a plaintiff from the peculiar favors of courts of equity results equally where his conduct has been unconscionable by reason of a bad motive or where the result in any degree induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Larscheid v. Kittell,* 142 Wis. 172, 125 N. W. 442. So, also, "the maxim applies not only to fraudulent and illegal transactions, but to any unrighteous, unconscientious or oppressive conduct by one seeking equitable interference in his own behalf." Eaton on Equity, page 74.

A case which is apparently directly in point is that of *Cushman v. New England Fire Ins. Co.,* 65 Vt. 569, 27 Atl. 426. The purpose of that suit was to reform a fire insurance policy. Touching the question here involved, the court said:

"A court of equity will not reform a contract if its execution was procured by the false representation of the party who is seeking to have it corrected; it will not order its specific performance. And this is the rule even if the party did not know of its falsity, and had no intent to deceive; nor does his belief in its truth make any difference. The question is, has the party been misled by a false representation calculated to mislead him, and not the existence of a fraudulent design in the cocontractor."

Appellant has cited other cases which he contends strongly support this view. We think, however, they are not in point. They are cases where the plaintiff sought rescission because of misrepresentations, and the courts held that there might be rescission notwithstanding the misrepresentations were not fraudulently made, and that intent was not a controlling factor.

This court has long since aligned itself in rescission cases with this doctrine. The maxim here involved was not discussed in those cases.

To support their contention that one does not come into court with unclean hands if the misrepresentations were innocently made, respondents cite *Harlan v. Willard*, 52 Cal. App. 194, 198 Pac. 424. There it appeared that the plaintiff, who was seeking to recover on a contract whereby a deceased person was to will her a portion of his property, had previously sought, as decedent's widow, to acquire one-half of his property. It was there contended that, because of her fraud in previous acts, the court should not give her any relief. The court said:

"The lack of a fraudulent purpose to get something to which she was not legally entitled takes the case without the rule as insisted for by appellant."

While this language is somewhat in respondents' favor, yet it ought not to be so considered, because the plaintiff in that case had not succeeded in her original fraudulent purpose and imposed no injury thereby. This exact question seems to have been but little discussed by the courts or text-book writers.

It is our view that a court of equity will deny relief to a party who, to the injury of another, has misrepresented facts connected with the relief sought, whether the misrepresentations were made with intent to defraud or were made in the honest belief that they were true, so long as the person making them retains the benefits flowing therefrom.

The judgment is reversed, and the cause remanded with directions to the trial court to determine whether the respondents made the misrepresentations charged and whether appellant relied thereon to his damage, and if it answers these questions in the affirmative,

then to deny respondents any relief on their cross-complaint and enter judgment for appellant as prayed. If the court find there were no material misrepresentations, or, if there were, they were not relied on or no injury resulted therefrom, then the judgment should be for respondents and against appellant, substantially as now made.

Under all the circumstances of this case, we deem it equitable that neither party should recover costs in this court of the other, and it is so ordered.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.